IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

EDDY TORRES, :
    Plaintiff, :
     : CIVIL ACTION
    v. :
     : NO. 14-2818
CLEANNET, U.S.A., INC., et al., :
    Defendants. :

November _4, 2014                                                                                            Anita B. Brody, J.

**MEMORANDUM**

Plaintiff Eddy Torres brings this class action against Defendants CleanNet U.S.A., Inc. ("CleanNet"), MKH Services, Inc. ("MKH"), and CleanNet Systems of Pennsylvania, Inc. ("CleanNet PA") pursuant to PA R. Civ. P. §§ 1701-16 on behalf of the following putative class: "All persons who performed cleaning services for Defendants in Pennsylvania at any time from April 11, 2011 to the present." Compl. ¶ 70. Torres originally filed this case in the Philadelphia Court of Common Pleas. Defendants removed this diversity class action from state court to district court pursuant to the Class Action Fairness Act of 2005 ("CAFA"). Before me is Torres' motion for remand based on the home state and local controversy exceptions to subject matter jurisdiction under CAFA. For the reasons set forth below, I will deny Torres' motion for remand.

**I. BACKGROUND[1]**

Defendant CleanNet is a commercial cleaning company that operates in Pennsylvania and other locations throughout the United States. CleanNet operates in Pennsylvania through two

---

[1] The facts are taken from the Complaint unless otherwise noted.

1

subfranchisors ("Area Operators"), Defendants MKH and CleanNet PA. "Collectively, these Defendants operate as joint employers of Plaintiff and the [putative] Class, and are uniformly controlled by the President of CleanNet." Compl. ¶ 3. Torres and the putative class members perform(ed) cleaning services for CleanNet as Pennsylvania franchisees of MKH and CleanNet PA.

On March 9, 2012, Torres entered into a Franchise Agreement with MKH to become a CleanNet franchisee and to perform cleaning services for CleanNet. In the Franchise Agreement, MKH agreed to provide Torres $7,000 in gross monthly billings, if Torres paid an Initial Franchise Fee of $24,500. Additionally, Torres authorized CleanNet to provide liability insurance. The monthly cost for this insurance was directly deducted from Torres' wages. From March through August 2012, CleanNet failed to provide Torres with $7,000 in gross monthly billings as required by the Franchise Agreement. On August 31, 2012, Torres and MKH executed an Addendum to the Franchise Agreement to downgrade the gross monthly billings from $7,000 to $3,000. From September 2012 through June 2013, CleanNet failed to provide Torres with $3,000 in gross monthly billings as required by the August 31, 2012 Addendum to the Franchise Agreement. In June 2013, Torres sought a refund of the Initial Franchise Fee that he paid in March 2012, as modified by the August 31, 2012 Addendum. On June 11, 2013, CleanNet refused to issue a refund.

CleanNet offers cleaning franchises to individuals, pursuant to which the individuals enter into a standard form Franchise Agreement. CleanNet classified Torres and other franchisees as independent contractors. However, "CleanNet requires Plaintiff and the [putative] Class members to perform janitorial services according to [CleanNet's] standards and

specifications, and [Torres and the putative class members] must sign [CleanNet's] standard franchise agreement and related agreements." *Id.* ¶ 29 (internal quotation marks omitted). Torres and members of the putative class are unable to negotiate different terms and conditions from those in the form Franchise Agreement provided by CleanNet. "CleanNet maintains control over all aspects of the janitorial service being performed by Plaintiff and members of the [putative] Class," including the manner and method of services, the schedule of service, the rates of pay, and the gross monthly billings. *Id.* ¶ 37. Additionally, CleanNet controls the type of cleaning equipment and supplies to be used and the amount that can be charged to a client. CleanNet also requires Torres and members of the putative class to purchase a variety of insurances, sets minimum limits for these coverages, and requires CleanNet and the Area Operator (either MKH or CleanNet Pa) to be named as additional insured at the expense of Torres and the putative class members.

Furthermore, CleanNet performs billing and collection services, and deducts its fees from the wages earned by Torres and the putative class members based on the monthly gross billings, regardless of whether Torres and the putative class members have been paid by the account. CleanNet charges Torres and members of the putative class 5% of gross monthly billings as an Administrative Fee to perform all billing and collection services. Even if a member of the putative class chooses not to use CleanNet's billing and collection services, the Administrative Fee is only reduced 1% (from 5% to 4%), and the putative class member must purchase special accounting software selected by CleanNet.

While CleanNet allows Torres and members of the putative class to accept or reject an assignment, all assignments whether accepted or rejected are counted toward CleanNet's

3

fulfillment of its obligation to provide monthly gross billings. However, many of these assignments are geographically inconvenient, too large to service, too small to be worth the time taken to get to the account, and/or economically infeasible. "CleanNet routinely assigns cleaning accounts that they know the [putative] Class members are unable to accept in an effort to satisfy their Monthly Gross Billings requirements." *Id.* ¶ 39.

Torres alleges that CleanNet intentionally misrepresents the terms of the relationship between CleanNet and members of the putative class, and targets individuals with limited fluency in English. Torres alleges that CleanNet has "devised a clever employment relationship" that misclassifies Plaintiff and members of the putative class as independent contractors. *Id.* ¶ 1. CleanNet operates in Pennsylvania through MKH and CleanNet PA who are "its agents and joint employers located in Pennsylvania." *Id.* ¶ 25. "The basis of this misclassification arises from CleanNet's orchestrated scheme to enlist its employees as franchisees, classify these employees as independent contractors, and evade the obligations of an employer under Pennsylvania law. " *Id.* ¶ 2. "As a result of Defendants' misclassification scheme, Plaintiff is owed wages under seven categories: (i) improperly collected or withheld fees; (ii) improperly withheld insurance premiums; (iii) pro rata share of unemployment compensation premiums; (iv) social security taxes (FICA); (v) Medicare; (vi) federal unemployment (FUTA); and (vii) overtime." *Id.* ¶ 18.

Torres brings causes of action on behalf of himself and the putative class members under the following Pennsylvania statutory and common laws: Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.101 *et seq.*; the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.*; the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §

201 *et seq.*, the Pennsylvania Workman's Compensation Act, 73 P.S. § 501(a)(d); Declaratory Judgments Act, 42 Pa. C.S. § 7531 *et seq.*; rescission; and unjust enrichment.

On June 2, 2014, Defendants CleanNet and CleanNet PA, among others, filed a motion before the Judicial Panel of Multidistrict Litigation (the "MDL Panel") to consolidate this action with two other actions: *Sanchez v. CleanNet USA, Inc., et al.*, U.S. District Court for the Northern District of Illinois, No. 1:14-cv-02143 and *Estrada, et al. v. CleanNet USA, Inc., et al.*, U.S. District Court for the Northern District of California, No. 3:14-cv-1785. Defendants CleanNet and CleanNet PA moved to transfer and centralize these three actions in the Northern District of Illinois pursuant to 28 U.S.C. § 1407.

On August 12, 2014, the MDL Panel denied the motion for transfer and centralization of these actions. The MDL Panel explained:

> [W]e are not persuaded that Section 1407 centralization is necessary either to assure the convenience of the parties and witnesses or for the just and efficient conduct of this litigation. Plaintiffs in all three actions allege CleanNet's business plan—in which CleanNet USA purportedly licenses "Area Operators" (its co-defendants) to sell commercial cleaning franchises—is both illusory and predatory, resulting in the misclassification of the "franchisees" as independent contractors rather than employees. While the business plan is a common element, each action involves different Area Operator defendants—who are alleged to be the signatories to the challenged franchise agreements—and different causes of action. . . . [T]here is little overlap among the putative classes, which are primarily brought on behalf of putative state classes and assert claims under state law (the exception being a putative nationwide collective action under the Fair Labor Standards Act in the Illinois action in addition to Illinois state law claims). At oral argument, counsel for the plaintiffs stated that they will coordinate with one another for purposes of any common discovery of the sole common defendant—CleanNet USA. Accordingly, available alternatives to centralization, in particular informal cooperation among the involved attorneys and coordination between the involved courts, appear likely to minimize whatever possibilities may arise of duplicative discovery or inconsistent pretrial rulings.

ECF No. 28, Order Denying Transfer.

## II. DISCUSSION

Plaintiff moves to remand this case to state court based on the home state and local controversy exceptions to subject matter jurisdiction under CAFA. "CAFA provides federal courts with jurisdiction over civil class actions if the 'matter in controversy exceeds the sum or value of $5,000,000,' the aggregate number of proposed class members is 100 or more, and any class member is a citizen of a state different from any defendant." *Vodenichar v. Halcón Energy Properties, Inc.*, 733 F.3d 497, 503 (3d Cir. 2013) (citing 28 U.S.C. § 1332(d)(2), (d)(2)(A), (d)(5)(B)). The statute authorizes federal jurisdiction over actions that lack complete diversity, but includes two mandatory exceptions to federal subject matter jurisdiction "where the controversy is uniquely connected to the state in which the action was originally filed"—the home state and local controversy exceptions. *Id.* (internal quotation marks omitted). The party seeking remand bears the burden of proving by a preponderance of evidence that one of these mandatory exceptions applies. *Id.*

### A. Home State Exception

Under the home state exception, a federal court must decline to exercise subject matter jurisdiction over a CAFA class action where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). To prove that this exception applies, the party seeking remand must:

> (1) establish that the citizenship of the members of two-thirds or more of the putative class is the state in which the action was originally filed; (2) establish the citizenship of the defendants; (3) identify the primary defendants; and (4) demonstrate that two-thirds or more of the members of the putative class are citizens of the same state as the primary defendants.

*Vodenichar*, 733 F.3d at 503-04. The home state exception applies only if all primary defendants are citizens of the state in which the action was originally filed. *Id.* at 506.

The parties agree that Torres, more than two-thirds of the putative class members, and Defendants MKH and CleanNet PA are all citizens of Pennsylvania, the state where the action was originally filed. They also agree that Defendant CleanNet is a citizen of Virginia. The parties dispute whether CleanNet is a primary defendant, and agree that whether the home state exception applies hinges on this determination.

Torres argues that CleanNet is not a primary defendant because CleanNet is not the real target of the litigation rather it is a secondary defendant. Torres contends that CleanNet has argued that it is not a direct defendant on several occasions. In the motion before the MDL Panel to consolidate this action with two other actions, CleanNet stated that it did not contract with any of the plaintiff franchisees, and questioned whether any claims could therefore be brought against it. ECF No. 19, Ex. 1 at 3. Additionally, in a separate action, in which CleanNet franchisees in Massachusetts demanded arbitration, CleanNet asserted that it was not a party to the franchise agreements between the franchisees and the Area Operator. *Id.* Ex. 3 ¶ 4. Thus, Torres contends that CleanNet's denials of liability prove that CleanNet is not a primary defendant. Furthermore, Torres argues that if CleanNet's role in the litigation is unclear, the Court should afford Torres jurisdictional discovery in order to determine whether CleanNet is a primary defendant. Defendants argue that the Court is limited to the allegations in the Complaint to make its determination, and that these allegations clearly establish that CleanNet is a primary defendant.

In *Vodenichar*, the Third Circuit reversed the district court's holding that the defendant, Halcón, was not a primary defendant because it had denied liability in its answer to the plaintiffs' complaint. 733 F.3d at 504. The Third Circuit explained that it is improper to consider whether a defendant has denied liability because CAFA's "[s]ponsors intended the identity of the 'primary defendants' to be determined based upon the allegations concerning the defendants expected to be liable to greatest number of class members and to suffer the greatest loss if liability is found." *Id.* at 505 n.5. The Third Circuit outlined the following relevant considerations for determining whether a defendant is a primary defendant:

> In short, courts tasked with determining whether a defendant is a "primary defendant" under CAFA *should assume liability will be found* and determine whether the defendant is the "real target" of the plaintiffs' accusations. In doing so, they *should also determine if the plaintiffs seek to hold the defendant responsible* for its own actions, as opposed to seeking to have it pay for the actions of others. Also, courts *should ask whether, given the claims asserted against the defendant*, it has potential exposure to a significant portion of the class and would sustain a substantial loss as compared to other defendants if found liable.

*Id.* at 505-06 (emphasis added). The following three factors control the primary defendant determination, whether the defendant: (1) is the "real target" of the plaintiff's allegations; (2) has potential exposure to a significant portion of the class; and (3) would sustain a substantial loss as compared to other defendants if found liable. *Id.* As to the first factor, the Third Circuit adopted CAFA's sponsors' definition of the "real target" as "the defendants who plaintiffs alleged are the real wrongdoers as opposed to those defendants who may have to pay because of the actions of others." *Id.* at 505. Thus, a defendant who is directly liable, rather than vicariously or secondarily liable, is a "real target." *Id.* at 504-05. As to the second and third factor, the Third Circuit explained that a district court should "focus on the number of class members purportedly

8

impacted by defendant's alleged actions and the amount the defendant may lose if found liable" in determining whether a defendant has potential exposure to a significant portion of the class and would sustain a substantial loss. *Id.* at 505. "To determine the number of class members to whom a defendant may be liable and to identify the defendants who would sustain the greatest loss if found liable, *courts must assume liability will be established.*" *Id.* (emphasis added).

In *Vodenichar*, the Third Circuit held that Halcón was a primary defendant because the plaintiffs "allege[d] that each defendant [was] directly liable, appear[ed] to apportion liability equally among the defendants, and [sought] similar relief from all defendants." *Id.* at 506. While more claims were asserted against the other defendants, this did not preclude finding that Halcón was a primary defendant because the claims asserted against it were as, if not more, significant than those asserted against the other defendants. *Id.*

Despite Torres' contention to the contrary, CleanNet's denials of liability are irrelevant to the determination of whether it is a primary defendant. *See Vodenichar*, 733 F.3d at 505. Rather, "the identity of the 'primary defendants' [must] be determined based upon the allegations" in the Complaint. *Id.* at 505 n.5. Moreover, a "court[] tasked with determining whether a defendant is a 'primary defendant' under CAFA should assume liability will be found." *Id.* at 505.

In this case, Torres alleges that "Defendants operate as joint employers of Plaintiff and the Class, and are uniformly controlled by the President of CleanNet." Compl. ¶ 3. Torres alleges that CleanNet "orchestrated" and "devised a clever employment relationship" to misclassify Plaintiff and members of the putative class as independent contractors. *Id.* ¶ 1, 2. Moreover, Torres alleges that "CleanNet maintains control over all aspects of the janitorial

9

service being performed by Plaintiff and members of the [putative] Class," *Id*. ¶ 37, and that CleanNet requires franchisees to name CleanNet and the Area Operator (either MKH or CleanNet Pa) as additional insured at the expense of Plaintiff and the putative class members.[2] Torres names CleanNet as a defendant in every count of the Complaint and seeks to hold CleanNet directly liable for each alleged violation. The Complaint establishes that CleanNet is a "real target" because it seeks to hold CleanNet directly liable. CleanNet is potentially liable to all putative class members because it is a named defendant in every count. Additionally, CleanNet would sustain the greatest loss if found liable because it is the mastermind of the scheme and a joint employer of all class members. Thus, CleanNet is a primary defendant.[3]

---

[2] In the briefing, Torres repeatedly asserts that only Area Operators and not CleanNet are named as additional insureds. However, this assertion is directly contradicted by the Complaint, which states: "CleanNet sets the minimum limits for these coverages, and requires *both CleanNet and the subfranchisor* . . . be named as an additional insured at the expense of Plaintiff and the [putative] Class members." Compl. ¶ 47 (emphasis added).

[3] "[T]hough district courts sometimes consider evidence in making some subject matter jurisdiction determinations, they do not always do so. . . . Congress was particularly concerned that subject matter jurisdiction determinations be made quickly under CAFA." *Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010, 1016 (9th Cir. 2011). A Report of the Senate Judiciary Committee supports the conclusion that CAFA allows only limited jurisdictional discovery on a few circumscribed issues:

> The Committee understands that in assessing the various criteria established in all these new jurisdictional provisions, *a federal court may have to engage in some fact-finding, not unlike what is necessitated by the existing jurisdictional statutes*. The Committee further understands that in some instances, limited discovery may be necessary to make these determinations. However, the Committee cautions that these jurisdictional determinations should be made largely on the basis of readily available information. *Allowing substantial, burdensome discovery on jurisdictional issues would be contrary to the intent of these provisions* to encourage the exercise of federal jurisdiction over class actions.

S. Rep. No. 109-14, at 44 (2005) (emphasis added). "Fact-finding is necessitated by the existing jurisdictional statutes on questions of citizenship and amount-in-controversy." *Coleman*, 631 F.3d 1010, 1017 (internal quotation marks omitted). It follows that there is no fact finding on the question whether a defendant is a primary defendant because it is "*unlike* the questions posed under existing jurisdictional statutes." *Id.* Moreover, the Third Circuit has indicated that a district court must make this determination based on the allegations in the Complaint. *See Vodenichar*, 733 F.3d at 505 n.5 ("[CAFA's] [s]ponsors intended the identity of the 'primary defendants' to be determined based upon the allegations . . . ."). The

Therefore, I will deny Torres' motion to remand under the home state exception because the exception does not apply.

### B. Local Controversy Exception

Under the local controversy exception, a district court shall decline to exercise jurisdiction:

> (i) over a class action in which--
>
>> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>>
>> (II) at least 1 defendant is a defendant--
>>
>>> (aa) from whom significant relief is sought by members of the plaintiff class;
>>>
>>> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>>>
>>> (cc) who is a citizen of the State in which the action was originally filed; and
>>
>> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) *during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons*.

28 U.S.C.A. § 1332(d)(4)(A) (emphasis added). Therefore, a party seeking remand under the local controversy exception must show that:

> (1) greater than two-thirds of the putative class are citizens of the state in which the action was originally filed; (2) at least one defendant is a citizen of the state in which the action was originally filed (the "local defendant"); (3) the local defendant's conduct forms a significant basis for the claims asserted; (4) plaintiffs

---

Complaint establishes that CleanNet is a primary defendant. To allow jurisdictional discovery would be contrary to the intent of CAFA.

> are seeking significant relief from the local defendant; (5) the principal injuries occurred in the state in which the action was originally filed; and (6) *no other class action asserting the same or similar allegations against any of the defendants had been filed in the preceding three years.*

*Vodenichar*, 733 F.3d at 506-07 (emphasis added).

The parties agree that the first five elements of the local controversy exception are met in this case. However, Defendants argue that the local controversy exception is inapplicable because there is an "other class action" filed within the three years preceding this action that asserts the same or similar factual allegations against CleanNet.

"[T]he term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). "CAFA does not define what constitutes an 'other class action' other than to limit it to filed cases asserting similar factual allegations against a defendant." *Vodenichar*, 733 F.3d at 508. The goals of the statute, however, provide guidance on the meaning of the term:

> In enacting CAFA, Congress recognized the benefits of having one federal forum to adjudicate multiple cases filed in various courts against a defendant. To this end, the statute seeks to control the impact of multiple class actions filed by different members of the same class against a defendant by providing a single forum to resolve similar claims. Moreover, Congress sought to have all but truly local controversies proceed in federal court and found that when a controversy results in the filing of multiple class actions, it is a strong signal that those cases may not be of the variety that [the local controversy] exception is intended to address.

*Id.* (citations and internal quotation marks omitted). "The local controversy exception seeks to identify a truly local controversy—a controversy that uniquely affects a particular locality to the exclusion of all others . . . ." *Id.* at 508 n.11 (internal quotation marks omitted). "In short, Congress wanted to ensure that defendants did not face

copycat, or near copycat, suits in multiple forums and hence excluded from the local controversy exception cases where a defendant was named in multiple similar cases. It follows that the 'no other class action' factor must not be read narrowly." *Id.* at 508.

Several weeks before Torres filed this action, a hybrid class and Fair Labor Standards Act collective action was filed against CleanNet and the Illinois Area Operator in the Northern District of Illinois, captioned *Sanchez v. CleanNet USA Inc., et al.*, Case No. 1:14-cv-02143. In *Sanchez*, the plaintiff alleges that CleanNet and its Area Operator, CleanNet of Illinois, Inc. jointly acted as the plaintiff's employer. *Sanchez* Amended Compl. ¶ 15. All counts of the complaint are brought against both defendants. The plaintiff brings two nationwide collective action claims under the FLSA. *Id.* ¶ 10. Additionally, the plaintiff brings class action claims for violations of the Illinois Minimum Wage Law, Illinois Wage Payment and Collection Act, Illinois Franchise Disclosure Act, and a claim for fraud in the inducement. *Id*.

The plaintiff alleges that "CleanNet retained complete control over the operation of its franchises," *Id.* ¶ 21, and misclassified the plaintiff and other similarly situated laborers as independent contractors thereby denying the plaintiff and other similarly situated laborers certain employment benefits such as timely payment of minimum wages and overtime wages. *Id.* ¶¶ 49-55. The plaintiff also alleges that CleanNet targeted individuals with limited English fluency and convinced them to enter into standard form franchise agreements that could not be negotiated. *Id.* ¶¶ 23, 27, 28. The franchise agreements guaranteed monthly business to franchisees, but the accounts offered to franchisees were often geographically inconvenient, too large to service, or too small to be worth the time taken. *Id.* ¶¶ 35-37. Moreover, as part of the franchise agreement, "CleanNet deducted excessive fees from Plaintiff's and other similarly situated laborers' wages,

13

including, but not limited to, deductions and fees for insurance, cleaning supplies, royalty and management, and payments on promissory notes and interest." *Id.* ¶ 47.

Defendants argue that the *Sanchez* litigation is an "other class action," and therefore the local controversy exception does not apply. Defendants contend that the *Sanchez* litigation is an "other class action" because it is factually and legally similar to this lawsuit.[4] Defendants also point out that a third similar action was filed against CleanNet, only eight days after this action, in the Northern District of California, captioned *Estrada v. CleanNet USA, Inc., et al.*, Civ. No. 3:14-cv-01785. Like this lawsuit, and the *Sanchez* case, the plaintiffs in *Estrada* allege that CleanNet controls nearly every aspect of how each local franchise operates, and intentionally misclassifies its employees as independent contractors in order to avoid its employment obligations. *Estrada* Compl. ¶¶ 53-57. Defendants argue that the *Estrada* litigation is further indicia that this lawsuit is not a truly local controversy.

Torres contends that the *Sanchez* litigation is not an "other class action" because the class action claims are solely Illinois state law claims, several of the legal claims differ between the two lawsuits, and "the crux of the factual assertions in both actions . . . derive[] from the contract and the relationships established between the putative class members and the Area Operators,"

---

[4]Additionally, Defendants note that the *Sanchez* litigation includes two nationwide collective action claims that create the potential for overlap in class membership between these two actions. Defendants argue that the nationwide collective action claims in *Sanchez* further demonstrate that this litigation is an "other class action." CAFA, however, only defines the term class action as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). A FLSA collective action is not filed under Rule 23, and "Rule 23 actions are fundamentally different from collective actions under the FLSA." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013). Therefore, the FLSA collective action claims are immaterial to the determination of whether *Sanchez* is an "other class action."

none of whom are defendants in both suits.[5] Pl.'s Mot. at 13. Additionally, Torres argues that the *Estrada* lawsuit is irrelevant to whether the *Sanchez* litigation is an "other class action" because it was filed after this litigation began.

The local controversy exception cannot apply to this case if the class action claims in the *Sanchez* litigation "assert[] the *same or similar factual allegations* against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A)(ii) (emphasis added). Both class actions allege that CleanNet controls almost all aspects of the operation of each local franchise, and misclassifies franchisees as independent contractors in order to avoid providing employees with certain employment benefits. Additionally, both suits claim that CleanNet failed to comply with minimum wage and overtime requirements in violation of state law. Moreover, both actions name CleanNet as a defendant in each count of the Complaint and seek to hold CleanNet directly liable for each alleged violation.

Furthermore, the *Estrada* litigation is a third pending class action suit against CleanNet that contains similar factual allegations and legal claims. "[W]hen a controversy results in the filing of multiple class actions, it is a strong signal that those cases may not be of the variety that [the local controversy] exception is intended to address." *Vodenichar*, 733 F.3d at 508 (internal

---

[5] During the pendency of this motion, the MDL Panel denied the motion to consolidate this action with the *Sanchez* and *Estrada* actions. For the first time, at a pretrial conference, Torres orally argued that the MDL Panel's Order Denying Transfer is further proof that the *Sanchez* litigation is not an "other class action" because it is not factually similar to this case. However, the standards for determining whether transfer is appropriate pursuant to 28 U.S.C § 1407 and whether a case is an "other class action" under CAFA are vastly different. Moreover, the MDL Panel's Order Denying Transfer does not state that the three actions are not factually similar. Rather, the MDL Panel states: "[W]e are not persuaded that Section 1407 centralization is necessary either to assure the convenience of the parties and witnesses or for the just and efficient conduct of this litigation." ECF No. 28. Moreover, the MDL Panel acknowledges, "Plaintiffs in all three actions allege CleanNet's business plan—in which CleanNet USA purportedly licenses 'Area Operators' (its co-defendants) to sell commercial cleaning franchises—is both illusory and predatory, resulting in the misclassification of the 'franchisees' as independent contractors rather than employees." *Id.* Thus, the MDL Panel's Order Denying Transfer does not bolster Torres' position that the *Sanchez* litigation is not an "other class action."

quotation marks omitted). While *Estrada* itself is not an "other class action" because it was filed after this litigation began, it is a "strong signal" that the instant litigation is not "a truly local controversy—a controversy that uniquely affects a particular locality to the exclusion of all others." *Id.* at 508 n.11 (internal quotation marks omitted).

Other courts have held that the local controversy is inapplicable to a class action where there has been a previously filed class action that shares similar factual allegations and a common national defendant, but the state law differs as do the local defendants. In *Green v. SuperShuttle International, Inc.*, No. 09-2129, 2010 WL 419964, at *1 (D. Minn. Jan. 29, 2010), the plaintiffs brought a class action against the national franchisor and the local franchisors alleging that the defendants had improperly misclassified the plaintiffs as franchisees rather than employees in violation of Minnesota Law. The court held that the local controversy exception did not apply because two other class actions had been filed in the previous three years against the same master franchisor alleging that the plaintiffs were misclassified as employees, as well as other similar factual allegations. *Id.* at *3.

In *Brook v. UnitedHealth Group Incorporated*, No. 06-12954, 2007 WL 2827808, at * 1 (S.D.N.Y. Sept. 27, 2007), the plaintiffs brought a class action under New York law on behalf of New York physicians against the health insurers that contract with physicians to provide health services to their insureds. The plaintiffs sued the parent business entity and its local affiliates, alleging that the defendant insurers required them to acquiesce to the "all products" clause in violation of New York law. *Id.* at 2. Thirteen months earlier, a similar class action had been filed in Connecticut alleging that the defendant insurers, including the same parent business entity and different local affiliates, had required Connecticut physicians to acquiesce to the "all

products" clause in violation of Connecticut law.  *Id.*  The plaintiffs in the New York suit admitted that both actions were basically the same, but argued that the local controversy exception should still apply because both actions limited membership in the class to the state in which the action was filed, and only raised claims under the laws of that state.  *Id.* at 4.  The court held that the local controversy did not apply because "Plaintiffs cannot simply evade federal jurisdiction by defining the putative class on a state-by-state basis, and then proceed to file virtually identical class action complaints in various state courts.  Such conduct is precisely what the CAFA legislation was intended to eradicate."  *Id.*

"Congress wanted to ensure that defendants did not face copycat, or near copycat, suits in multiple forums and hence excluded from the local controversy exception cases where a defendant was named in multiple similar cases."  *Vodenichar*, 733 F.3d at 508.  It is indisputable that this action and the *Sanchez* litigation contain very similar factual allegations, as well as several analogous legal claims, against the same defendant—CleanNet.  Torres' decision to limit the class to Pennsylvania franchisees and to bring only Pennsylvania state law claims does not remove these similarities.  This class action is not a truly local controversy that only affects Pennsylvania because, as alleged in all three class action complaints, CleanNet controls the operations of all of its franchises nationwide and misclassifies all of its franchisees as independent contractors.  The local controversy exception does not apply because the *Sanchez* litigation is an "other class action."  Therefore, I will deny Torres' motion to remand on this basis.

## III. CONCLUSION

For the reasons set forth above, I will deny Torres' motion for remand.

                                                s/Anita B. Brody

                                          _____

                                              ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                Copies **MAILED** on _____ to:

18